UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS.

CIVIL ACTION NO: 1:20-cv-11434-NMG

**HECTOR MORALES**
*Plaintiff*

v.

**FEDERAL EXPRESS CORPORATION**
*Defendant*

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Hector Morales, through counsel, hereby opposes the Motion for Summary

Judgment filed by Defendant Federal Express Corporation ("FedEx").  In summary, plaintiff

asserts that he has met his burden of proof in relation to his claims of race discrimination and

retaliation, that the reasons advanced by Defendant for Mr. Morales' termination of employment

are pretextual, and that there are genuine issues of material fact in dispute which require that this

case be tried.

Plaintiff claims that his employment was terminated due to his race, Hispanic.

**INTRODUCTION**

The counts of the complaint as to which summary judgment is opposed, are

the following:

I.     Against FedEx for discrimination and harassment on the basis of race
       in violation of 42 U.S.C. section 1981.
II.    Against FedEx for discrimination and harassment on the basis of race
       in violation of MGL Chapter 151B.
III.   Against FedEx for retaliation in violation of 42 U.S.C. section 1981.
IV.    Against FedEx for retaliation in violation of MGL Chapter 151B.

1

The genesis of this action is years of racially tinged harassment of Mr. Morales by Manager Mark O'Brien, harassment of which Mr. Morales complained to other managers and to Human Resources. This eventually led to a July 2017 altercation between Mr. Morales and Mr. O'Brien in which Mr. O'Brien without reason yelled at Mr. Morales, put his hands on Mr. Morales, and shoved Mr. Morales, after which FedEx chose to unfairly terminate Mr. Morales' employment but not to impose any discipline at all on Mr. O'Brien.

The genuine issues of material fact in dispute include the nature of the July 2017 altercation, and whether Mr. Morales was held to a stricter disciplinary standard than White employees.

At the time that Mr. Morales' employment was terminated in July 2017, he had worked for FedEx for almost two years.

Mr. Morales claims that but for his race (Hispanic) and his prior complaints of discrimination, his employment would not have been terminated for the incident of July 26, 2017.

Summary of Argument

Plaintiff claims that in light of his several years of service and the relatively minor (and uncertain) nature of the matter of which he was accused, it was excessive to punish him by terminating his employment. The extreme and excessive nature of the punishment is evidenced by the fact that despite the prior actions and racial baiting by Mr. O'Brien, and the assault by Mr. O'Brien, there was zero discipline imposed upon Mr. O'Brien. In light of the prior complaints of unfair treatment and discrimination made by Mr. Morales to managers and to Human Resources, the termination is also retaliatory.

Any claim that the actions for which Plaintiff was disciplined were the reason for

2

Plaintiff's termination, is clearly just a pretext.

## Factual Background

Plaintiff does not dispute most of the facts set forth in Defendant's statement of undisputed facts. In brief, the facts of this matter, as set forth in that statement and the disputed parts of that statement, are as follows:

Plaintiff is a Hispanic male. For approximately 2 years, until his termination in July of 2017, he worked for FedEx in various capacities. Although plaintiff had several relatively minor disciplinary issues, they were not significant.

While Plaintiff was employed by FedEx, one of his managers was a Caucasian male, Manager Mark O'Brien. Although Manager O'Brien was not Plaintiff's immediate manager, he was one of the managers at the facility, and would regularly interact with Plaintiff.

Although Mr. O'Brien was known to be somewhat gruff and difficult with all employees, Plaintiff has testified that he was particularly hard on Hispanic and Black subordinates. This is borne out by the treatment of Plaintiff by Manager O'Brien over most of Plaintiff's employment. Statement of Fasts ("SOF") at Disputed Facts 34, 35 and 37.

Manager O'Brien would yell at Plaintiff and speak to him rudely in front of other employees, he would bait Plaintiff, he would often "get in his face," and most significantly, for nearly two years several times a week, Manager O'Brien would intentionally call Mr. Morales by the wrong name. Rather than calling Mr. Morales by his name, he would refer to him as "Gonzales." SOF at Disputed Facts 34, 35 and 37.

**Clearly, this was not an error on the part of Manager O'Brien, but an indirect way of insulting Mr. Morales and denigrating him due to his being Hispanic.**

Prior to the incident for which his employment was terminated, Mr. Morales had complained to several managers and to Human Resources, to no avail, about being mistreated, and discriminated against due to his race, Hispanic. SOF at Disputed Fact 38.

In mid July 2017, an incident occurred at the workplace which led to Plaintiff's termination.

Specifically, an individual Plaintiff had sued in small claims court showed up without notice or warning in the parking lost at Plaintiff's workplace, and started cursing and screaming at Plaintiff. Plaintiff was off-duty at the time. Several managers came to the parking lot where this was occurring, and saw to it that the intruder left. This incident was not the fault of Mr. Morales, and nothing he did caused it to happen. SOF at Disputed Facts 28 and 29, Additional Disputed Facts 1.

Managers Crowley and O'Brien were the managers who dealt with the intruder. After being sure that the intruder left the premises, they asked Mr. Morales to go inside the facility. SOF at Disputed Facts 28 and 29, Additional Disputed Facts 1.

As Mr. Morales walked inside towards the break room, Manager O'Brien started following him, screaming and swearing at him at the top of his lungs and calling him "Gonzales." As Mr. Morales and Mr. Crowley were in the break room, Manager O'Brien started being confrontational. Mr. Morales maintained his composure, and asked Mr. Crowley if he could speak with him in private due to the aggressive behavior of Mr. O'Brien. This apparently

infuriated Manager O'Brien, who again started shouting at Mr. Morales. Mr. O'Brien refused to listen to Manager Crowley's advice to let him handle it. SOF at Disputed Facts 28 and 29, Additional Disputed Facts 1.

As Mr. Morales tried to leave the break room with Manager Crowley, Manager O'Brien walked up to him, got close to his face, and would not let him walk around him. SOF at Disputed Facts 28 and 29, Additional Disputed Facts 1.

**According to Mr. Morales: "at that point, Manager O'Brien put his hands on my chest and gave me a shove. I absolutely had not touched Manager O'Brien at that point nor did I later. After Manager O'Brien put his hands on me, employee Darryl Maule and Manager Crowley stepped in between me and Manager O'Brien. I then told Manager O'Brien that he was a racist, and that if he put his hands on me again I would call human resources."** SOF at Disputed Facts 28 and 29, Additional Disputed Facts 1.

After initially providing a false statement saying that he had not observed Manager O'Brien putting his hands on Mr. Morales, employee Darryl Maule submitted a second statement acknowledging that the assault had indeed occurred, and stating that he had previously been dishonest because he was afraid of retaliation. SOF at Additional Disputed Facts 1.

Mr. Morales was terminated shortly thereafter. There was no discipline accorded to Mr. O'Brien for any role he played in this matter. SOF at Additional Disputed Fact 2.

There are a number of disputed material facts in this case. Essentially, they are consist of:

1. The facts as to what actually occurred during the July 26, 2017 incident.

2. The extent to which Manager O'Brien was biased or prejudiced against Hispanics.

3. The extent to which Manager O'Brien would refer to Mr. Morales as "Gonzalez."

4. The prior interactions between Mr. Morales and Mr. O'Brien.

5. The knowledge held by other managers and human resources representatives of complaints by Mr. Morales about Mr. O'Brien's discrimination.

6. Whether Mr. O'Brien assaulted Mr. Morales.

7. Whether, based upon the differing treatments of Mr. O'Brien and Mr. Morales as a result of this incident, Mr. Morales was subjected to a different disciplinary standard than was Mr. O'Brien.

## RELEVANT LAW AND ARGUMENT

The Discrimination and Retaliation Claims

As Defendants point out in their memoranda, in most cases alleging discrimination, the burden shifting framework is utilized. However, that process is not used, when there is direct evidence of discrimination. See, e.g. Wynn & Wynn v. MCAD, 431 Mass. 655 (2000); Febres V. Challenger, 214 F.3d 57 (1st Cir. 2000).

Plaintiff asserts that the remarks made by Mr. Obrien and his conduct toward Plaintiff, are direct evidence of both race discrimination. These racist statements and actions were known to the human resources department at the FedEx facility at which Plaintiff worked (through his complaints of discrimination), and were therefore known to the individuals who were the decision makers as to Plaintiff's eventual termination.

**However, whether these statements are viewed as direct evidence of discrimination or not, they are strong evidence of pretext supporting the denial of the summary judgment motion as to both race and retaliation.**

The law relevant to a summary judgment motion in a case in which employment

discrimination is alleged under MGL Chapter 151B (virtually the same as the standard for Title

VII claims ), is set forth in detail in two Supreme Judicial Court decisions, Bulwer v. Mount

Auburn Hospital, 473 Mass. 672 (2016), and Verdrager v. Mintz, Levin, 474 Mass. 382 (2016).


Initially, the Bulwer Court discussed the three stage burden-shifting paradigm for

employment discrimination cases. The Court then discussed the role of proof of

"pretext" in detail, at 681-682, as follows:

> "As we explained in Lipchitz, supra at 500-501:
>
> ...
>
> **To survive a motion for summary judgment, the plaintiff need only present evidence
> from which a reasonable jury could infer that "the respondent's facially proper
> reasons given for its action against him were not the real reasons for that action."
> Wheelock College v. Massachusetts Commission Against Discrimination, 371 Mass.
> 130, 139 (1976) (Wheelock College).** The case can then proceed to trial, at which point,
> "if the fact finder is persuaded that one or more of the employer's reasons is false, it may
> (but need not) infer that the employer is covering up a discriminatory intent, motive or
> state of mind." Lipchitz, supra at 501. In other words, a fact finder at trial may infer that
> "[c]ombined with establishment of a prima facie case…, a showing of pretext eliminates
> any legitimate explanation for the adverse hiring decision and warrants a determination
> that the plaintiff was the victim of unlawful discrimination. Blare, supra at 446."

(emphasis added)


The holding of the Verdrager Court echoed the holding of Bulwer, but with even greater

emphasis. At 397, the Verdrager Court stated the following:

> "Because 'Massachusetts is a pretext only jurisdiction,' id., **an employee may survive
> summary judgment by producing evidence 'that the respondent's facially proper
> reasons given for its action against him [or her] were not the real reasons for that
> action,'** Wheelock College v. Massachusetts Commission Against Discrimination, 371
> Mass. 130, 139 (1976), even if that evidence does not show directly that the true reasons
> were, in fact, discriminatory. See Bulwer, supra at 681-682; Lipchitz, supra at 500-501.
> **Such indirect evidence is sufficient at the summary judgment stage** because
> '[c]ombined with establishment of a prima facie case…a showing of pretext eliminates
> any legitimate explanation for the adverse hiring decision and warrants,' but does not

require, "a determination that the plaintiff was the victim of unlawful discrimination.'
Blare, supra at 446."

(emphasis added)

Particularly at the summary judgment stage, proof of pretext is adequate for a case to

move forward to trial, and no direct evidence of discriminatory motive is required. The

Verdrager Court taught the following at 404:

> "**Where, as here, the required inferences are reasonable, it 'is not for a court to
> decide on the basis of [briefs and transcripts]' whether they are correct, 'but it is for
> the fact finder after weighing the circumstantial evidence and assessing the
> credibility of the witnesses.'** Lipchitz, supra at 499, quoting Blare, supra at 445."

(emphasis added)

Even if a false reason for an adverse action is factually accurate, it is still false, and not

the real reason for a termination. It does not prevent pretext from being found. See

Bulwer, supra note 2 ("A false reason is one that is not the real reason for terminating an

individual's employment, regardless whether the false reason is factually accurate.") A

factually accurate false reason would not prevent pretext from being found. **A false**

**reason mandates a finding of pretext.**

A factor which is highly relevant to the pretextual nature of the punishment accorded Mr.

Morales, is the excessive nature of that punishment, termination of employment, especially when

compared to the conduct of Manager O'Brien and the lack of discipline imposed upon Manager

O'Brien. The excessive nature of Mr. Morales' punishment, proves that the punishment was **not**

due to the conduct of Mr. Morales.

One of the arguments made by Defendant is that the discrimination claims must fail, as Plaintiff

has not established that "comparators" were treated differently than he was, and that he has not

established anything regarding any individual who might have filled his position after his termination. This argument is misplaced.

As to "comparators," although it is correct that Plaintiff must be able to show a causal connection between his race and the employment practices of which he complains, he is **absolutely not required** to do that by analyzing the treatment of "comparators." Initially, the question for purposes of a *prima facie* case is not whether a Plaintiff can show different treatment than comparators. Rather, Plaintiff is required to show that there is a causal connection between his race and the harm he has suffered. Although an analysis of the treatment of comparators is certainly one way of proving causal relationship, and although it is a frequently utilized method of proving the causal connection, it is by no means the only method allowed.

The case of Trustees of Health and Hospitals of the City of Boston, Inc. vs. Massachusetts Commission Against Discrimination, 449 Mass. 675 (2007) was a termination case, in which Plaintiffs had alleged race and gender discrimination. In discussing the Plaintiffs' burden of proof regarding a prima facie case, the Court stated at 686:

> "The four elements of the complainants' proof are (1) membership in a protected class; (2) harm; (3) discriminatory animus; and (4) causation. **Comparator evidence is not specifically required.**" (emphasis added)

The Court went on to state that "…the complainants were not required to follow the McDonnell Douglas paradigm in order to prevail. It is certainly one way to present a case, but it is not the only way." Trustees of Health and Hospitals, supra, at 687.

9

Weber vs. Community Teamwork, Inc., 434 Mass. 761 (2001) was a failure to promote case, in which the plaintiff alleged gender discrimination. In discussing the appropriate proof required of a plaintiff, the Court stated at 777:

> "On a claim of unlawful discrimination, a plaintiff must prove at trial that she is a member of a protected class, she suffered harm as a result of an employer's adverse employment action, and the employer harbored discriminatory animus, which was the determinative cause of the adverse action. See Lipchitz vs. Raytheon Co., ante 493, 502, 504 (2001)."

The case of Lipchitz vs. Raytheon Co., 434 Mass. 493 (2001), specifies that a plaintiff may prove the final two elements of a prima facie case of discrimination, **by proof of pretext**. Specifically, Lipchitz states at 502:

> "The statute sets out four elements: membership in a protected class, harm, discriminatory animus, and causation…
>
> …
>
> As we have said, in an indirect evidence case, we permit the fact finder to infer discriminatory animus (and causation) **from proof that the employer offered a false reason for the adverse employment decision**. Permitting the factfinder to infer discriminatory animus from proof that the employer has advanced a false reason does not, however, eliminate the plaintiff's burden to prove this essential element…Stated differently, the "indirect evidence" moniker derives from the type of evidence (pretext) that may establish one or both statutory elements (discriminatory animus and causation)." (emphasis added)

Indeed, in Kosereis vs. Rhode Island Training School, 331 F.3d 207 (1st Cir. 2003), the First Circuit Court of Appeals stated explicitly that evidence regarding similarly situated employees was not required in order for a plaintiff in a disparate treatment case to successfully set forth a

prima facie case of discrimination.   The <u>Kosereis</u> Court also held that "[e]vidence that the

employer's stated reasons for its actions are pretextual can be sufficient to show improper

motive, and hence, allow the plaintiff to survive summary judgment.  See <u>Reeves v. Sanderson</u>

<u>Plumbing Prods., Inc.</u>, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 <u>L.Ed.2d</u> 105 (2000)…"


The analysis to be engaged in then, is whether or not the practices of which Plaintiff complains,

occurred "in circumstances that would raise a reasonable inference of unlawful discrimination."


The <u>Sullivan vs. Liberty Mutual</u> case, 444 Mass. 34 (2005), makes clear the well accepted principle

that the elements of a prima facie case "may vary depending upon the specific facts of the case,"

<u>Sullivan</u>, <u>supra</u> at 42, and that a plaintiff's burden in establishing a prima facie case is **not** intended

to be onerous, <u>Sullivan</u>, <u>supra</u> at 45.


This approach is consistent with the approach in other circuits, such as the scheme set forth by the

Second Circuit Court of Appeals in <u>Shumway vs. United Parcel Service</u>, 118 F.3d 60 (2nd Cir.

1997).  <u>Shumway</u> was a case in which a female employee claimed that a facially neutral workplace

policy had been applied to her in a discriminatory manner due to her gender.  The Court stated that

the Plaintiff's prima facie case would consist of proving that she is a woman, she was qualified for

her position, she was discharged, and <u>her discharge occurred under circumstances giving rise to</u>

<u>an inference of discrimination</u>.  Although the Court mentioned that the "circumstances giving rise

to an inference of discrimination" could indeed be the different treatment of a similarly situated

male employee, the Court mentioned that as one way of proving the prima facie case, <u>not a required</u>

<u>method of proof</u>.

As is discussed in Sullivan, the accepted method of proof in most "indirect evidence" discrimination cases is that after plaintiff establishes a prima facie case, the defendant is given an opportunity to provide a "legitimate non-discriminatory" business reason for its actions. If a defendant succeeds in meeting the burden of advancing the non-discriminatory reason, the burden of production moves back to the plaintiff. See, e.g. Sullivan, supra, at 40-56. As stated by the Sullivan Court at 55-56:

> "The burden returns to [the plaintiff] to establish that the basis of [the defendant's] decision was unlawful discrimination "by adducing evidence that the reasons given by [the defendant] for its actions were mere pretexts to hide such discrimination." Lewis v. Boston, 321 F.3d 207, 214 (1st Cir. 2003). "this may be accomplished by showing that the reasons advanced by [the defendant] for making the adverse decision are not true." Abramian v. President and Fellows of Harvard College, 432 Mass. 107, 117 (2000).

As was stated above, "[e]vidence that the employer's stated reasons for its actions are pretextual can be sufficient to show improper motive, and hence, allow the plaintiff to survive summary judgment. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)…" Kosereis vs. Rhode Island Training School, 331 F.3d 207 (1st Cir. 2003).

An inference of discrimination (from proof of pretext, such as proof that an employer's "non-discriminatory" reason is false), coupled with proof of a prima facie case of discrimination, "permits the factfinder to conclude that the employee has satisfied her initial burden of proving that the decision was made "because of" the unlawful discrimination…" Lipchitz vs. Raytheon Company, 434 Mass. 493 (2001).

Circumstantial evidence may also include evidence of a general atmosphere of discrimination at the place of employment. Likewise, evidence that an employer, acting through its officials and managers, considered race, national origin or religion in other employment matters can also support a conclusion that the unlawful bias was a factor in a case. See, e.g., Lewis v. Area II Homecare for Senior Citizens, Inc., 397 Mass. 761, 767, 493 N.E.2d 867, 871–72 (1986); Smith College v. MCAD, 376 Mass. 221, 228 & n.9, 380 N.E.2d 121, 125 & n.9 (1978); Johansen v. NCR Comten, Inc., 30 Mass.App.Ct. 294, 298, 568 N.E.2d 611, 613 (1991).

Proof of pretext causes a case to move forward to trial.


Defendant's Arguments Regarding a Shortened Limitations Period

As part of its argument that Plaintiff contractually agreed to a short statute of limitations (a mere six months) for his claims, Defendant asserts that Plaintiff's claims under 42 U.S. Code Section 1981 are subject to a three year statute of limitations, based upon Govan v. Trustees of Boston University, 66 F. Supp. 2d 74, 80 (D. Mass. 1999). This is an incorrect statement of law.  In 2004 the U.S. Supreme Court made clear in Jones v. R.R. Donnelley & Sons,  541 U.S. 369, 382 (2004) that Section 1981 claims are subject to a four year statute of limitations. To the extent any claims asserted by Plaintiff are subject to a three year statute of limitations, those would be his state law claims under MGL Chapter 151B.

In any event, Defendant argues in its brief that Plaintiff's claims are time barred, as during his employment application process Mr. Morales signed an employment agreement requiring that claims against FedEx be brought within six months.

Defendant then goes on to site a federal case in Massachusetts approving a contractually limited

limitations period, Krumholz v. AJA, 691 F. Supp.2d 252, 256 (D. Mass 2010), and various

cases from Tennessee, Kentucky, the Southern District of New York and the Middle District of

North Carolina approving of the FedEx 6 month limitations period.

In Logan v. MGM Grand, 939 F. 3d 824 (6th Cir. 2019) the Sixth Circuit held invalid on policy

grounds the application of a shortened limitations period to Title VII civil rights claims.  The

Sixth Circuit later held, in Thompson v. Fresh Products, 985 F. 3d 509 (6th Cir. 2021) that the

application of a shortened limitations period would be similarly invalid when applied to either

disability discrimination claims or age discrimination claims.

A contractually agreed upon six month limitations period which was claimed to bar

discrimination claims under the New Jersey civil rights law, was roundly rejected by the

Supreme Court of New Jersey in Rodriguez Raymours Furniture Company, 225 N.J. 343 (N.J.

2016), 138 A. 3d 528 (2016).  At 346-347, the New Jersey Supreme Court held as follows:

> "…the challenged provision cannot be viewed as a private contractual agreement
> by which private parties contract to limit private claims by shortening the
> generally applicable statute of limitations for such actions. The cause of action
> that plaintiff brings is factually premised on his employment relationship, but it is
> not a simple private claim. Plaintiff alleges [a New Jersey civil rights law]
> violation-- a law designed for equal parts public and private purposes.  The [New
> Jersey civil rights law] plays a uniquely important role in fulfilling the public
> imperative of eradicating discrimination. One searches in vain to find another
> New Jersey enactment having an equivalently powerful legislative statement of
> purpose, along with operative provisions that arm individuals and entities with
> formidable tools to combat discrimination not only through their use but also by
> the threat of their use. There is a huge incentive for employers to thoroughly
> investigate and respond effectively to internal complaints in order to limit or
> avoid liability for workplace discrimination. Responsible employers are partners
> in the public interest work of eradicating discrimination, but such responsible
> behavior takes time. A shortened time frame for instituting legal action or losing
> that ability hampers enforcement of the public interest…. Restricting the ability of
> citizens to bring [New Jersey civil rights law] claims is antithetical to that societal

aspiration and defeats the public policy goal. We hold that a private agreement that frustrates the [New Jersey civil rights law's] public purpose imperative by shortening the two year limitations period for private [New Jersey civil rights law] claims cannot be enforced."

Every single one of the reasons so eloquently stated by the New Jersey Supreme Court for refusing to enforce a shortened limitations period for civil rights claims, applies virtually identically to claims asserted under the Massachusetts civil rights statute, Massachusetts General Laws Chapter 151b.

In terms of Massachusetts case law, as to the Krumholz case, that was not a case in which the plaintiff asserted any rights under the civil rights or discrimination laws, but rather, was a business dispute regarding contract rights.

In the context of this case, any such contractual shortening of the limitations period for bringing civil rights claims would be contrary to public policy in Massachusetts and would be invalid. That is made clear by the opinion of the Supreme Judicial Court in Warfield v. Beth Israel Deaconess Medical Center, 454 Mass. 390 (2009).

The plaintiff in Warfield had signed an employment agreement providing that any claims, controversies or disputes arising out of that employment agreement would be settled by arbitration. The agreement did not contain any reference to employment discrimination or Chapter 151B. After plaintiff eventually filed a court complaint alleging claims of gender discrimination, retaliation and common law claims, the employer moved to dismiss the case and to compel arbitration.

After the Superior Court denied the employer's motion to compel arbitration, the employer

sought direct appellate review by the Supreme Judicial Court.

Although the Court held that agreements to arbitrate Chapter 151B claims could be valid and enforceable, the Court unequivocally held that any employment contract containing an agreement to limit or waive any rights or remedies conferred by Chapter 151B was enforceable **only** if such agreement stated in clear and unmistakable terms that such limitations related to discrimination claims as well as other claims. See Warfield, supra, at 398 and 402.

The "agreement" relied upon by Defendant for its "shortened limitation period" argument, contains absolutely no reference to either discrimination claims or Chapter 151B. As such, the contractual language is invalid and unenforceable in Massachusetts under Warfield and related cases.

Plaintiff's claims have been litigated in a timely manner.

Discrimination and Retaliation by Defendant against Plaintiff

Based upon Defendant's Statement of Fact Number 29, as well as Defendant's argument on page Six of its memorandum, it is clear that Defendant is claiming that Plaintiff's employment was terminated for the conduct he engaged in when going back into the FedEx facility on July 27, 2017. However, Plaintiff and Defendant differ as to what occurred during the July 27, 2017 interaction, and there is a genuine issue of material fact as to what occurred.

Specifically, Plaintiff claims that when he was confronted by Manager O'Brien in the break room, in addition to yelling and screaming at him, and calling him by a name he knew was incorrect which was a repetition of his previous race baiting, **Manager O'Brien assaulted Mr. Morales**.

The fact of the assault bears upon the validity of Defendant's claim that Plaintiff was fired for his conduct, as well as whether this claim was merely a pretext, and whether Mr. Morales was being held to a different disciplinary standard then a White employee who had engaged in substantially more serious misconduct, Manager O'Brien.

Was Mr. O'Brien a manager and Mr. Morales not a manager? Yes.

Did Mr. Morales have some prior disciplinary infractions? Yes.

Were Mr. Morales' actions on July 27, 2017 in not immediately responding to questions from managers in any way comparable to Mr. O'Brien's actions that day of yelling, screaming, race baiting and assaulting Mr. Morales? **Absolutely not**.

Neither the difference in status between Mr. O'Brien and Mr. Morales, nor any possible differences in their disciplinary records, in any way explains or justifies the extreme discipline accorded to Mr. Morales with the zero discipline accorded to Mr. O'Brien. The only explanation is a continuation of the race discrimination engaged in against Mr. Morales, and a desire by FedEx to rid itself of an employee who was willing to complain of race discrimination and harassment, and to bring such matters to light.

Indeed, the dangers and difficulties of exposing such matters at the FedEx facility in which Mr. Morales worked, are no better exemplified then by the behavior of Mr. Morales' coworker Darryl Maule.

Mr. Maule acknowledged being untruthful in an initial statement submitted to FedEx during its investigation of the incident between Mr. Morales and Mr. O'Brien. Mr. Maule corrected his untruth in a later statement submitted to FedEx, in which he confirmed that Mr. O'Brien had

17

indeed assaulted Mr. Morales.  He justified his initial untruth by explaining that he was afraid of retaliation against him in the workplace.  See Additional Disputed Fact 1.

The question of what actually occurred during the July 27, 2017 altercation between Mr. Morales and Manager O'Brien is certainly central to many of the other disputed material facts in this case. However, other genuine issues of material fact exist as well.

The other genuine issues of material fact in this case all lead to the question of the veracity of the explanation advanced by Defendant for Plaintiff's termination, and whether the reasons advanced for the termination were nothing more than a pretext for discrimination and retaliation.

Specifically:

1.   How frequently did Manager O'Brien engage in race baiting of Plaintiff by calling him Gonzalez?  Defendant claims that this occurred "on occasion," whereas Plaintiff asserts that this occurred several times per week.  Such blatant discrimination and harassment, and the knowledge of management that Mr. Morales claimed this was occurring, would prove that any actions of Mr. O'Brien on July 27, 2017 and management's reaction to that incident, were based in racial bias.

2.   When Plaintiff complained of his treatment by Manager O'Brien, did he inform other managers and human resources representatives that he felt his mistreatment was based upon race discrimination?  This knowledge by other managers and by human resources, and their lack of action in response to this, is further proof that the discipline of Mr. Morales for the incident of July 27, 2017, and the lack of discipline of Mr. O'Brien, is based upon retaliation against Mr. Morales for his prior complaints of discrimination.

3.   Whether the prior interactions between Mr. Morales and Mr. O'Brien indicated racial bias by Mr. O'Brien. Such blatant discrimination and harassment, and the knowledge of management that Mr. Morales claimed this was occurring, would prove that any actions of Mr. O'Brien on July 27, 2017 and management's reaction to that incident, were based in racial bias.

4.   Whether, given Mr. O'Brien's much more serious misconduct than that of Mr. Morales, despite the fact that Mr. O'Brien was a manager, there was a disparate and discriminatory disciplinary standard applied to Mr. Morales?  A Hispanic employee, a Hispanic employee who management and human resources knew had complained of racial discrimination in the past by the person who assaulted him, was terminated for perhaps not answering a question soon enough, whereas the White manager who assaulted that Hispanic employee in the course of their altercation, was subjected to no discipline at all.

The resolution of several of these issues of material fact would also tend to prove Plaintiff's claim that the reason he was subjected to termination after the altercation, was retaliation against him for his prior complaints of racial discrimination.[1]  In the analysis of any claim of illegal retaliation against Plaintiff, the question of Plaintiff's prior disciplinary record for allegations of relatively minor matters occurring 14 months previously and 20 months previously, becomes irrelevant.

In terminating Plaintiff's employment, Defendant was motivated by a distinct intent to rid the workplace of someone who complained of unlawful practices.

---

[1] It must be noted that as is stated at Disputed Fact 38 on page five of Plaintiff's Statement of Material Facts as to Which There Exists a Genuine Issue to Be Tried, at least one of the management individuals to whom Plaintiff complained of racial discrimination, Human Resources Representative Perry Jenkins, was also one of the individuals who approved the termination of Plaintiff's employment.

**CONCLUSION**

For all of the foregoing reasons, it is respectfully requested that Defendant's Motion for

Summary Judgment be denied in full, and that this matter be scheduled for trial.


Respectfully submitted,

HECTOR MORALES
By his attorney

/s/ Mitchell J. Notis

_____

Mitchell J. Notis
Law Office of Mitchell J. Notis
27 Harvard Street
Brookline, MA 02445
617-487-8677
BBO# 374360



CERTIFICATE OF SERVICE

I, Mitchell J. Notis, hereby certify that this document filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing and
that paper copies will be sent to any non-registered participants as indicated in the Notice of
Electronic Filing, this _____ day of May, 2022.

/s/Mitchell J. Notis

_____

MITCHELL J. NOTIS, BBO# 374360
Law Office of Mitchell J. Notis
27 Harvard Street
Brookline, MA 02445
Tel: 617-487-8677