IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HECTOR MORALES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:20-cv-11434-NMG |
| ) | |
| FEDERAL EXPRESS CORPORATION, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Federal Express Corporation ("FedEx"), pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, submits this Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment.

**A.    Morales Cannot Establish Pretext.**

    **1.    *Morales Cannot Show FedEx's Reasons for His Termination Were False.***

In response to FedEx's Motion for Summary Judgment, Plaintiff Hector Morales ("Morales") argues that "[a]ny claim that the actions for which [he] was disciplined were the reason for [his] termination, is clearly just a pretext." To establish pretext under M.L.C. c.151B, Morales must show that FedEx's articulated reasons for terminating his employment were false. *See Dacunha v. Skip Sagris Enterprises, Inc.*, 2020 WL 5217059 at *4 (D. Mass. Aug. 31, 2020). A review of the record, however, reveals that the nondiscriminatory reasons given for Morales' termination in his termination letter are fully supported by the undisputed facts, including Morales' own deposition testimony.

1

The following statements of the reasons for Morales' termination are taken directly from the termination letter (Morales Dep. Exhibit 12), and are supported by the undisputed facts of this case[1]:

- **On 07/26/2017, outside in the parking lot of our facility you were observed having a heated argument with someone you know in front of the employee entrance.** – This sentence is supported by SOF 23: "Morales testified during his deposition that he and Gumbs became involved in a heated argument a few feet away from the employee entrance of the FedEx building and approximately 100 feet from the customer entrance of the building. (Morales Dep. 159:23-161:4)."

- **Managers were made aware of the argument and went outside to diffuse the situation.** – This sentence is supported by SOF 24: "…I just remember that, you know, the managers came out…Pat Crowley…Karrie…and I think Mark O'Brien came out. (Morales Dep. 161:5-163:20)." This sentence is also supported by SOF 26: "Manager Pat Crowley approached Morales and Gumbs in the parking lot, and told Gumbs to leave, and asked Morales if he was okay. (Morales Dep. 173:6-21)."

- **Once the other individual had exited the FedEx parking lot, station management attempted to interview you to determine what exactly had transpired, and if there was any further threat to you or the employees of the station. You ignored managements repeated request to speak to them, became disruptive and refused to answer questions or follow any of management requests.** – These sentences are supported by SOF 27: "As Morales started walking back into the building, Manager Crowley began asking Morales questions about what was going on between him and Gumbs, and why they were involved in a heated argument in the parking lot, but Morales ignored his questions. (Morales Dep. 174:16-176:25)." They are also supported by SOF 28: "As Crowley and other Managers questioned Morales about what had happened in the parking lot to assess any potential danger to Morales or other employees at the station, Morales continued telling them it was a 'personal issue' and provided them with no further details. (Morales Dep. 178:13-179:13)."

In "Plaintiff's Statement Pursuant to Local Rule 56.1 of Material Facts of Record as to Which There Exists a Genuine Issue to be Tried," Morales states that he disputes SOF 28, but does not contest the deposition testimony supporting SOF 28. Instead, Morales merely states: "DISPUTED. The nature of the July 26, 2017 incident is described by Plaintiff under oath in

---

[1] Of the SOF's cited by FedEx in this Reply Memo, Morales only disputes SOF 28. *See* Plaintiff's Statement Pursuant to Local Rule 56.1 of Material Facts, DE 37, PageID# 1.

his Charge of Discrimination at pages 2-3.…" This denial and reference to Morales' Charge of Discrimination does not change Morales' deposition testimony supporting SOF 28:

> **Q** Okay. But isn't it true that you kept saying that it was a personal issue and none of FedEx's business. Is that correct?
>
> **A** Yeah. I mean, it was a personal matter, and like I said, the guy came on my job unannounced. I didn't even know he was there. So I – and I told Karrie, I told Karrie, like you know, 'It' a personal issue that I'm dealing with. It has to do with money. I'm taking him to court, and the guy showed up unannounced to – pretty much threaten me and say whatever he had to say to me, and that's that.' You know?
>
> (Morales Dep. 178:13-179:13).

Morales' attempt to create a factual disparity by relying on the narrative from his charge of discrimination, which conflicts with his deposition testimony, is unavailing.  It is axiomatic in the First Circuit that a party cannot create an issue of fact to survive summary judgment simply by contradicting his own sworn testimony.  *See Pena v. Honeywell Internat'l, Inc.*, 923 F.3d 18, 30 (1st Cir.) (rejecting the plaintiff's attempt to create a genuine issue of fact by submitting an affidavit "in obvious conflict" with her own deposition testimony).

- **Upon completion of our investigation, it was determined that your conduct was in violation of the Acceptable Conduct Policy (P2-5), a copy of which is attached for your review.** – This sentence is supported by SOF 20: "On July 26, 2017, Morales was suspended with pay by Manager Karrie Schaubroeck, pending an investigation of an incident that occurred at the Boston BVYA facility that day. (Morales Dep. 156:17-157:3, Exhibit 10)."

- **As a result of your behavior history, your employment is being terminated effective 7/31/2017.** – This sentence refers to Morales' disciplinary history, described in SOF's 6 – 18, which shows that Morales exhibited a well-documented pattern of disruptive behavior in violation of FedEx's Acceptable Conduct Policy (P2-5) dating back to November 2015, when he received a warning letter for failing to follow management's directives and being involved in a verbal altercation with a manager. (SOF 8).  Subsequently, in May 2016, Morales received another warning letter after creating a disturbance in the lobby of one of FedEx's hotel customers, which resulted in Morales being escorted out by hotel security, and later returning to the hotel to confront its employees about the hotel's complaint.  (SOF 15).  Finally, in July 2017, Morales engaged in a heated altercation with a man who owed him money on FedEx premises.  And, despite acknowledging that the man threatened him and may have been

3

armed, Morales ignored FedEx management's legitimate safety concerns and questions about the altercation, maintaining it was a "personal issue." (SOF 27, 28). It was this pattern of behavior that led to Morales' termination, as clearly articulated in the termination letter. (Morales Dep. Exhibit 12).

Nothing in the record indicates FedEx manufactured its stated reasons for Morales' termination. The amount of credible evidence supporting the nondiscriminatory reasons for Morales' termination is plentiful. Thus, the burden shifted to Morales to show the motivation for his termination was discriminatory, which he has failed to do.

### 2. *Allegations that O'Brien Called Morales "Gonzalez" Are Not Probative of Pretext.*

Without citing any authority, Morales also argues that allegedly being called "Gonzalez" several times per week by Manager O'Brien proves that the reasons given for the termination of his employment were pretext for race discrimination. *See* Plaintiff's Response in Opposition, DE 36, PageID# 18. Merely being called the wrong name by a person who was not responsible for the adverse employment action is not probative of pretext.

The Court's analysis in *Beltran v. Univ. of Texas Health Science Center at Houston*, 837 F.Supp.2d 635 (S.D. Tex. 2011), is instructive. There, the plaintiff who was terminated from the defendant state university medical center's surgical residency alleged the defendant's reason for his termination—failure to demonstrate necessary academic knowledge and clinical skill—was pretext for discrimination based on his Hispanic race. As evidence of pretext, he offered that he was subjected to a "pattern of 'racial disrespect,'" including being "misidentified… 'with a variety of Latino names ranging from Juan to Luis to Alex.'" *Id*. at 644. The Court found the plaintiff could not rebut the defendant's legitimate, non-discriminatory reasons for his termination because: (1) he failed to allege that he was called the incorrect name at or around the time of his termination, (2) he failed to show that being called the wrong name in any way related to the adverse action,

and (3) he failed to show that the person to whom the name-calling was attributed recommended the termination or otherwise participated in the decision making process.

Similarly, Morales' testimony that O'Brien called him "Gonzalez" is insufficient to establish that FedEx's articulated reason for his termination was pretext. Here, it is undisputed that O'Brien was not Morales' manager at any time relevant to this lawsuit and that O'Brien did not make the decision to terminate his employment. (SOF 36; Morales Dep. Exhibit 12). And, even if FedEx were aware of the alleged name-calling, Morales has presented no evidence that the actual decisionmaker—Manager Karrie Schaubroeck—relied on information from O'Brien or anyone else who may have had discriminatory animus against him in terminating him. Finally, there is no proof that O'Brien called him "Gonzalez" under circumstances related to the July 27, 2017 altercation, and his subsequent termination. Without evidence that the alleged disparaging remarks were made in close temporal proximity to the adverse action, that they were related to the employment decision in question, or that they were made by a decisionmaker, the probative value of such stray remarks as it relates to the pretext inquiry is circumscribed. *See Bonefont-Igaravidez v. Internat'l Shipping Corp.*, 659 F.3d 120, 125 (1st Cir. 2011).

    **3.**    ***Morales Cannot Use Manager O'Brien as a Comparator to Prove Pretext.***

Morales insists he is "absolutely not required" to analyze the treatment of comparators to show a causal connection between his race and the employment practices of which he complains. *See* Plaintiff's Response in Opposition, DE 36, Page ID# 9. But he bases his pretext argument in large part on the assertion that Manager O'Brien's alleged assault of him "bears upon the validity of [FedEx's] claim that [he] was fired for his conduct, as well as whether this claim was merely a pretext, and whether [Morales] was being held to a different disciplinary standard than a White employee who had engaged in substantially more serious misconduct, Manager O'Brien." *Id.* at

PageID# 17. In effect, Morales offers O'Brien as a comparator. As a matter of law, this comparison is inapposite.

Where Morales chooses to establish pretext using comparators, *he bears the burden of producing evidence* to show that similarly situated individuals outside his protected category were treated differently (emphasis added). *See Matthews v. Ocean Spray Cranberries, Inc*., 686 N.E.2d 1303, 1309 (Mass. 1997); *see also*, *Bratton v. CSX Transp., Inc*., 586 F.Supp.2d 12, 19 (D. Mass. 2008) (granting the employer's motion for summary judgment on the plaintiff's c.151B claim where he failed to "come forward with specific, detailed evidence required by established law to prove that [his] twelve [alleged comparators] were similarly situated to him"). To do so, Morales must "identify and relate specific instances where persons similarly situated 'in all relevant respects' were treated differently." *See Matthews*, 686 N.E.2d at 1310. In considering whether alleged comparators are similarly situated, Massachusetts courts may consider, among other things, the terms of their performance, qualifications and conduct; any differentiating or mitigating circumstances that would distinguish their situations; and whether the offenses are of comparable seriousness. *Id*.

Morales fails to meet his burden of production to show with specific, detailed evidence that O'Brien is similarly situated to him. It is undisputed that FedEx terminated Morales' employment for a pattern of disruptive behavior that culminated in the July 27, 2017 altercation in the FedEx parking lot. However, he has presented no evidence that O'Brien had a similar pattern of behavior or disciplinary history or that O'Brien was otherwise similar to him in any relevant respect.

More fundamentally, Morales admits he and O'Brien are not similarly situated in a material way—i.e. in terms of their qualifications and responsibilities. That is, he admits that O'Brien was a manager, not an hourly employee like him, at all times relevant to this lawsuit. *See* Plaintiff's

6

Response in Opposition, DE 36, Page ID# 17 ("Was Mr. O'Brien a manager and Mr. Morales not a manager?  Yes.").  "Two employees are not similarly situated where their duties and responsibilities are not the same or at least comparable."  *Williams v. Frank*, 757 F.Supp. 112, 118 (D. Mass. 1991) ("Clearly, there can be no comparison drawn between plaintiff, a window distribution clerk…and Karavetsos who is …a manager…").  Thus, O'Brien is not an appropriate comparator and may not be used to establish pretext here.

**B.     Morales Does Not Deny His §1981 Claim is Subject to FedEx's Contractual Limitations Provision and the Cases Cited in Support of his c.151B Claims Do Not Support His Position.**

Morales admits he signed FedEx's standard "Employment Agreement," which contains a provision requiring him to file suit on any claim arising out of his employment within 6 months. (SOF 2,3.). In its motion for summary judgment, FedEx argued that his claims under §1981, which does not require exhaustion of any administrative remedies prior to filing suit, should be dismissed as untimely based on this contractual limitations provision.  *See* Defendant's Memorandum in Support of Its Motion for Summary Judgment, DE, PageID# 8,9.

Though Morales argues that dismissal of his c.151B claims pursuant to the Employment Agreement would offend Massachusetts public policy, he offers no response to FedEx's argument regarding his §1981 claims.  In fact, the only reference he makes to his §1981 claims is that they are subject to a 4-year statute of limitations.  *See* Plaintiff's Response in Opposition, DE 36, PageID# 13.  By failing to address FedEx's argument, he waived any opposition on this issue, and his §1981 claims should be dismissed as untimely.  *See e.g.*, *Frady v. C.R. Bard, Inc.*, 2020 WL 2079511 at *3 (D. Mass. Apr. 30, 2020) (finding the plaintiff waived several claims by failing to address them in her opposition to the defendant's motion for summary judgment).

It also bears note that the authority Morales cites in favor of his argument that the contractual limitations provision is ineffective as to his c.151B state-law claims does not support his position. Particularly, *Logan v. MGM Grand Detroit Casino*, 939 F.3d 824 (6th Cir. 2019) involved a claim under Title VII, not state law or §1981. And, in *Thompson v. Fresh Products, LLC*, 985 F.3d 509 (6th Cir. 2021), the Court held that the limitations periods for the plaintiff's ADA disability and ADEA age claims were not waivable by contract. However, the Court held the employer's 6-month contractual limitations provision, similar to the one at issue, was valid as to her state-law claims brought under the Ohio Civil Rights Act. *Id*. at 521-22.

Additionally, his reliance on *Warfield v. Beth Israel Deaconess Medical Center*, 910 N.E.2d 317 (Mass. 2009) as the lynchpin of his public policy argument is similarly inapposite. There the Court held that the defendant employer's arbitration clause, stating that "[a]ny claim, controversy or dispute arising out of or in connection with this Agreement or its negotiations shall be settled by arbitration," was "insufficiently clear" to require the plaintiff to arbitrate her c.151B claims because when "[r]ead as a whole, the contract language…suggests an intent to arbitrate disputes that might *arise from or be connected to the specific terms of the [employment] agreement itself*" (emphasis added). *Id*. at 328.

FedEx's limitations provision to which Morales agreed contains no such ambiguity. Rather, it clearly provides that he must bring *"[a]ny claim* within the time period provided by law or no later than six (6) months from the date of the *event forming the basis of [his] claim*" (emphasis added). *See* SOF 2. Unlike the *Warfield* provision, it does not suggest that its application is limited to disputes over the terms of the Employment Agreement itself. Thus, it is broad enough to encompass "any claim" arising from his employment with FedEx. Moreover, *Warfield* does not stand for the proposition that a contractual limitations provision must

8

specifically reference c.151B to be effective as Morales suggests. On the contrary, "the [Supreme Judicial Court] pointed out that its holding 'should not be understood to suggest that parties entering into an employment (or any other) contract must specifically list every possible statutory claim that might arise or else the claim will not be covered by an otherwise broad arbitration clause." *See Barasso v. Macy's Retail Holdings, Inc.*, 2016 WL 1449567 at *9 (D. Mass. Apr. 12, 2016) (finding *Warfield* did not bar enforcement of the parties' arbitration agreement as to the plaintiff's c.151B claims). Where, as here, an "otherwise broad" limitations provision "clearly and unmistakably" encompasses such claims within its purview, *Warfield* is satisfied. *Id*.

C. **Morales' Retaliation Claim Fails Because He Cannot Establish a Causal Connection.**

Morales also argues that alleged complaints he made about O'Brien's conduct to a FedEx human resources representative and other managers constituted protected activity for which he suffered retaliation (i.e. termination). But, even if Morales can demonstrate he made complaints of racial discrimination against O'Brien prior to his termination, he has failed to establish a causal connection between those complaints and the adverse action. Certainly, the timing of those complaints is uncertain as evidenced by his deposition testimony quoted below:

> **Q** Okay. So who did you complain to and when?
>
> **A I mean I can't recall the specific dates, 'cause like I said, its been a while.** But like I said, I have went to Jim Kelly about it. I went to Karrie. I have have went to Gately about it. I had went too Pat Crowley about it, like – like the one time, like, it was probably towards the end. You know, I I had brought it to Edwin's attention before – like, every manager that knows the situation, like, that I've been going through with him, like, I have brought it to all their attention.

(Morales Dep. 222:20 – 223:5) (emphasis added).

> **Q** Okay. But you keep on referring to an email. Who did you email and when?
>
> **A** Perry Jenkins. **I don't remember the exact dates,** but there was – there's a bunch of e-mail – like there's emails that I've sent to him, more than once...

9

**Q** Was it after your termination you sent these emails?

**A** No, no. It was – it was before – before the termination, like, -- like when I first wrote to Perry about it, I feel like I'm being discriminated, it was – **I don't know if it was like a year before or months before my termination**, but I – I had brought it t their attention that I feel like I'm being discriminated.

(Morales Dep. 225:21 – 226:11) (emphasis added).

As stated earlier, Morales has failed to present evidence showing that FedEx's stated legitimate, nondiscriminatory reasons for terminating his employment, as outlined in his termination letter, were false. Likewise, he has failed to present evidence showing a causal link between any alleged complaints he made to management, and his termination. As a result, Morales' retaliation claim must be dismissed.

## CONCLUSION

For the foregoing reasons, FedEx requests this Court to enter an order granting its motion for summary judgment against Plaintiff Hector Morales, dismissing all claims and granting FedEx such other and further relief to which it may be entitled.

DATED:  May 27, 2022

                                  Respectfully submitted,

                                  */s/ Charles V. Holmes*
                                  Charles V. Holmes (*Admitted Pro Hac Vice*)
                                  Brandon D. Pettes (*Admitted Pro Hac Vice*)
                                  FEDERAL EXPRESS CORPORATION
                                  3620 Hacks Cross Road
                                  Building B, Second Floor
                                  Memphis, TN  38125
                                  Telephone: 901.434.8485
                                  Facsimile: 901.457.6522
                                  charles.holmes@fedex.com
                                  brandon.pettes@fedex.com

                                  Lorenzo B. Cabantog (BBO# 692298)
                                  OGLETREE, DEAKINS, NASH, SMOAK &
                                  STEWART, P.C.
                                  One Boston Place, Floor 35, Suite 3500
                                  Boston, MA 02108
                                  Telephone: 617.994.5700
                                  Facsimile: 617.994.5701
                                  lorenzo.cabantog@ogletree.com

                                  **COUNSEL FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2022, a copy of the foregoing was served via the Court's electronic system and via first-class mail upon:

Mitchell J. Notis
Law Offices of Mitchell J. Notis
27 Harvard Street
Brookline, MA 02445
mitchnotis@aol.com

Counsel for Plaintiff

                                                    */s/Charles V. Holmes*
                                                    Counsel for Defendant

Doc #1610161